IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU,<br><br>      Plaintiff,<br><br>      v.<br><br>JAMES R. CARNES, MELISSA C. CARNES, JAMES R. CARNES, AS CO-TRUSTEE OF THE JAMES R. CARNES REVOCABLE TRUST DATED FEBRUARY 10, 2010; MELISSA C. CARNES, AS CO-TRUSTEE OF THE JAMES R. CARNES REVOCABLE TRUST DATED FEBRUARY 10, 2010; JAMES R. CARNES AS CO-TRUSTEE OF THE MELISSA C. CARNES REVOCABLE TRUST DATED FEBRUARY 10, 2010; and MELISSA C. CARNES AS CO-TRUSTEE OF THE MELISSA C. CARNES REVOCABLE TRUST DATED FEBRUARY 10, 2010.<br><br>      Defendants. | **COMPLAINT**<br><br>**CASE NO. 23-2151** |

The Consumer Financial Protection Bureau (Bureau) brings this action against James R. Carnes (Carnes), Melissa C. Carnes, James R. Carnes, as Co-Trustee of the James R. Carnes Revocable Trust dated February 10, 2010 (JRC Trust); Melissa C. Carnes, as Co-Trustee of the JRC Trust; James R. Carnes, as Co-Trustee of the Melissa C. Carnes Revocable Trust dated February 10, 2010 (MCC Trust); and Melissa C. Carnes, as Co-Trustee of the MCC Trust, and alleges as follows.

1

# INTRODUCTION

1. Soon after Defendant Carnes became aware of the Bureau's investigation into his illegal payday lending business, he began transferring significant assets to the MCC Trust, whose beneficiary is Carnes' wife. Between 2013 and 2015, Carnes fraudulently transferred $12.3 million from himself (through the JRC Trust) to the MCC Trust.

2. As co-trustee of the MCC Trust, Carnes has control over the trust and uses it to conduct his personal and business affairs. The fraudulent transfers from Carnes to the MCC Trust were executed by Carnes after he learned of the Bureau's investigation (with at least one transfer occurring on the same day the Bureau filed its notice of charges against him in November 2015).

3. The Bureau brings this action under the Federal Debt Collection Procedures Act of 1990, 28 U.S.C. §§ 3001-3308, for avoidance of multiple fraudulent transfers to the extent necessary to satisfy the debt to the Bureau, including all available remedies and any other relief the circumstances may require.

# JURISDICTION AND VENUE

4. This Court has subject-matter jurisdiction over the Bureau's claims because this action presents a federal question, 28 U.S.C. § 1331, and is brought by an agency of the United States, 28 U.S.C. § 1345.

5. Venue is proper in the District under 28 U.S.C. § 1391 because all defendants reside in Kansas, the trusts' principal place of administration is in Kansas, and a substantial part of the events or omissions giving rise to the claims occurred in this district.

## PARTIES

6. The Bureau is an agency of the United States charged with regulating "the offering and provision of consumer financial products or services under the Federal consumer financial laws." 12 U.S.C. § 5491(a). The Bureau has independent litigating authority. 12 U.S.C. § 5564.

7. Defendant James R. Carnes is a natural person residing in Mission Hills, KS, and is a judgment debtor of the Plaintiff Consumer Financial Protection Bureau. Carnes is the settlor/grantor and co-trustee of the JRC Trust and is also the co-trustee of the MCC Trust.

8. Defendant Melissa C. Carnes is a natural person residing in Mission Hills, KS and is James R. Carnes' wife. Melissa C. Carnes is the settlor/grantor and co-trustee of the MCC Trust and is also the co-trustee of the JRC Trust.

## FACTS

9. On January 11, 2021, the Bureau's Director issued a final order against Integrity Advance, LLC and James R. Carnes (Bureau Final Order). The Bureau Final Order held, among other things, that the disclosures in Integrity Advance's loan agreement violated the Truth in Lending Act (TILA) and the Consumer Financial Protection Act (CFPA); that through Integrity Advance's use of the loan agreement, both Integrity Advance and Carnes engaged in deceptive and unfair practices; that Integrity Advance violated the Electronic Funds Transfer Act (EFTA) and the CFPA when it conditioned credit on repayment by preauthorized electronic fund transfers; and that as a result of Integrity Advance's use of remotely created checks, both Integrity Advance and Carnes engaged in unfair practices. Further, the Director concluded that restitution to harmed customers was appropriate; that Integrity Advance and Carnes should both

be liable for civil money penalties; and that they should be required to assist the Bureau in identifying customers entitled to redress.

10. The Bureau Final Order required that, within 30 days after service of the order, Integrity Advance and Carnes pay restitution of $38,453,341.62 to the Bureau. The Bureau Final Order further required Integrity Advance to pay a civil money penalty of $7,500,000 and Carnes to pay a civil money penalty of $5,000,000 to the Bureau.

11. The Acting Director denied Carnes and Integrity Advance's requested stay pending appeal but stayed the effective date of the Bureau Final Order to permit them an opportunity to seek a stay from the Court of Appeals. The new effective date for the Bureau Final Order was April 7, 2021.

12. Integrity Advance and Carnes did not seek a stay pending appeal in the Court of Appeals and failed to comply with the Bureau Final Order.

13. When Carnes refused to comply with the Bureau Final Order, the Bureau obtained an order and judgment from the district court for the District of Kansas on July 30, 2021 for the payment of restitution of $38,453,341.62 to the Bureau, as well as a civil money penalty of $7,500,000 against Integrity Advance and a civil money penalty of $5,000,000 against Carnes, in *Consumer Financial Protection Bureau v. Integrity Advance, LLC and James R. Carnes*, 21-mc-206 (D. Kan. July 30, 2021) (ECF Nos. 21, 22).

14. The Bureau Final Order was affirmed by the Tenth Circuit Court of Appeals on September 15, 2022 and a petition for certiorari was filed on March 1, 2023. *See Integrity Advance, LLC, et al. v. Consumer Financial Protection Bureau*, 48 F. 4th 1161 (10th Cir. 2022), *petition for cert. filed*, 2023 WL 2388430 (U.S. Mar. 1, 2023) (No. 22-838).

15. Neither Integrity Advance nor Carnes have made any payment in satisfaction of the Judgment.

### Carnes' Transfers of More than $12 Million to the MCC Trust During the Bureau's Investigation (First through Fourth Transfer)

16. Sometime on or after January 7, 2013, Carnes learned that Integrity Advance, LLC, a company he controlled and ran, was under investigation by the Consumer Financial Protection Bureau.

17. Carnes had an indirect ownership interest in Integrity Advance. Hayfield Investment Partners was the 100% owner of Integrity Advance. Carnes was the 100% owner of Willowbrook Marketing, LLC, which was the majority owner of Hayfield.

18. Along with Edward Foster, Carnes was one of two primary employees at Integrity Advance and listed himself as Integrity Advance's President and Assistant Corporate Secretary.

19. On January 7, 2013, the Bureau served a Civil Investigation Demand (CID) on Integrity Advance.

20. On January 23, 2013, Integrity Advance's counsel met with Bureau enforcement staff and made representations about the dates by which Integrity Advance could respond to certain interrogatories and document requests. These representations were presumably based on information received from the client, Integrity Advance. At the time, Carnes was the President of Integrity Advance and ran its affairs.

21. On January 24, 2013, the day after Integrity Advance's counsel met with Bureau enforcement staff, Carnes submitted an application to set up an account at Wells Fargo Advisors on behalf of the JRC Trust. On February 14, 2013, and February 25, 2013, this JRC Trust account received funds in the amount of $6,412,161.76 and $2,179,806.22, respectively, stemming from Carnes' sale of his payday lending business.

22. Since Carnes is the settlor of the JRC Trust, which is a revocable trust, the property of the JRC Trust is subject to the claims of Carnes' creditors. K.S.A. 58a-505(a)(1).

23. Approximately six months after the Bureau had served its CID on Integrity Advance, on or about June 3, 2013, Carnes, in his capacity as co-trustee of the JRC Trust, transferred $2,200,000 from a JRC Trust bank account at Wells Fargo Advisors to a bank account owned by the MCC Trust at Stephens, Inc. (First Transfer). The wire transfer record shows that Carnes authorized the transfer.

24. On September 25, 2013, the JRC Trust account received an additional $5,226,000 from Carnes' sale of EZ Corp stock, which Carnes received as part of his sale of his payday lending business.

25. On October 25, 2013, Integrity Advance submitted interrogatory responses and document productions to the Bureau in response to the Bureau's January 7, 2013 CID that identified Carnes' ownership interest in and management role at Integrity Advance.

26. Subsequently, on November 18, 2013 and December 16, 2013, the JRC Trust's Wells Fargo Advisors account received wire transfers of additional payments of $3,000,142.59 and $2,483,283.47, respectively, stemming from Carnes' sale of his payday lending business.

27. On November 25, 2013, Integrity Advance submitted additional interrogatory responses to the Bureau in response to the Bureau's January 7, 2013 CID. In response to Interrogatory 21 of that CID, Integrity Advance disclosed that Carnes provided information and reviewed the written responses on behalf of the Company.

28. On December 5, 2013, Carnes, as co-trustee of the JRC Trust, made a wire transfer of $7,000,000 from the JRC Trust account at Wells Fargo Advisors to the MCC Trust account at Stephens, Inc. (Second Transfer).

29. On or about December 19, 2013, Carnes, as co-trustee of the JRC Trust, made a wire transfer of $3,117,325.00 from the JRC Trust account at Wells Fargo Advisors to the MCC Trust account at Stephens, Inc. (Third Transfer).

30. On March 14, 2014, Carnes drafted a check for $656,533.36 from the MCC Trust account at Stephens, Inc., made payable to the JRC Trust, with the term "loan" in the notes section, which was then deposited into the JRC Trust account at Wells Fargo Advisors.

31. On October 23, 2014, Enforcement counsel conducted a call and sent a Notice and Opportunity to Respond and Advise (NORA) letter to Carnes' counsel stating that Enforcement Counsel was considering recommending that the Bureau take legal action against Integrity Advance and Carnes.

32. On November 17, 2015, Enforcement staff informed counsel for Integrity Advance and Carnes that the Bureau would be filing a lawsuit against Integrity Advance and Carnes on the following day, November 18, 2015.

33. On November 18, 2015, the Bureau filed its notice of charges against Integrity Advance and Carnes. On that same day, Carnes transferred an additional amount ($608,281.25) from the JRC Trust to the MCC Trust account at Stephens, Inc. (under the listed purpose of "loan repayment") (Fourth Transfer).

34. The MCC Trust did not provide any reasonably equivalent consideration in exchange for the First, Second, or Third Transfers.

35. At the time of the First, Second, Third, and Fourth Transfers, Integrity Advance had unlawfully collected millions of dollars in interest and fees from consumers in violation of the TILA, CFPA, and EFTA.

36. At the time of the First, Second, Third, and Fourth Transfers, Defendant James R. Carnes had unlawfully collected millions of dollars in interest and fees from consumers in violation of the CFPA and through Integrity Advance's violations of the TILA, CFPA, and EFTA.

37. At the time of the First, Second, Third, and Fourth Transfers, Integrity Advance had received a law enforcement inquiry from the Bureau regarding potential violations of federal consumer financial law.

38. As Integrity Advance's owner and President and Assistant Corporate Secretary, Carnes was aware of and assisted in the response on behalf of Integrity Advance to the Bureau's law enforcement inquiry.

39. As described above, at the time of the Fourth Transfer, Defendant Carnes was aware that the Bureau would be filing a lawsuit against Integrity Advance and Carnes.

40. When the Bureau propounded post-judgment discovery on Carnes about any family trusts and potential transfers of assets that had occurred from January 1, 2014 to present, Carnes objected and refused to disclose any information concerning the assets of the MCC Trust and any transfers that occurred prior to October 2019, including the First, Second, Third, and Fourth Transfers.

41. When the Bureau served Rule 45 subpoenas directly on five financial institutions for the account records of the MCC Trust dating back to the beginning of the Bureau's investigation, Carnes filed a motion to quash, objecting on relevance grounds to those financial institutions disclosing financial transactions that took place between January 1, 2013 and December 31, 2013, including the First, Second, and Third Transfers.

42. After making the First, Second, Third, and Fourth Transfers, Carnes has regularly authorized and continues to authorize payments to and from the MCC Trust account to fund his various businesses and purchase vehicles, artwork, jewelry, stock, alternative investments, and vacation homes for himself and his family, indicating that he has retained possession or control of the property transferred after the transfer (*see* Paragraphs 44-52).

43. After making the First, Second, Third, and Fourth Transfers, by purchasing and retaining vehicles, artwork, jewelry, stock, alternative investments, and real property in the name of the MCC Trust, rather than his own name, Carnes has removed or concealed assets that would otherwise be publicly traceable to him (*see* Paragraphs 44-52).

**Carnes' Removal or Concealment of the First through Fourth Transfers Through Cash, Vehicles, Art, Jewelry, Stock, Alternative Investments, and Real Property Held in the Name of the MCC Trust**

44. The combined cumulative transfers from the JRC Trust to the MCC Trust during the pendency of the Bureau's investigation of Carnes and Integrity Advance through the date of the filing of the Bureau's notice of charges (First through Fourth Transfer) is $12,269,072.89 (subtracting $656,533.36 transferred from the MCC Trust to the JRC Trust in March 2014).

45. Using the fraudulently transferred funds set forth in Paragraphs 16-43 (First through Fourth Transfers), Carnes has removed or concealed fraudulently transferred property by purchasing or retaining other property under the name of MCC Trust.

46. Carnes maintains separate deposit accounts at various financial institutions under the name of the MCC Trust, including an account at Stephens, Inc. that contained $744,002.41 as of June 30, 2022 and an account at Country Club Bank that contained $132,425.51 as of March 9, 2022.

47. In addition to the 2005 Mercedes G500 whose title is under Carnes' name (and therefore subject to collection in *CFPB v. Integrity Advance, LLC, et al.*, 21-mc-206 (D. Kan.)), Carnes retains possession of five other vehicles valued over $300,000 whose titles are listed under the MCC Trust, including make/model, VIN, and insured amounts listed below:

   a. 2010 Ferrari, ZFF65LJA4A0172295 ($101,557)

   b. 2009 Lexus LX 570, JTJHY00W694020496 ($28,782)

   c. 2015 Land Rover Range Rover, SALGS2TF8FA213908 ($48,330)

   d. 2018 Land Rover Range Rover, SALWR2RE2JA190589 ($101,171)

   e. 2020 Audi Q5 2.0T Quattro, WA1BNAFY4L2015925 ($49,329)

48. Carnes retains approximately $800,000 in insured jewelry in the name of the MCC Trust including the following jewelry pieces (and their insured value):

   a. Diamond pendant ($34,287)

   b. Ladies Rolex watch ($41,836)

   c. Ladies platinum ring ($36,981)

   d. Ladies 14KT white gold diamond tennis bracelet ($33,246)

   e. Marked Tiffany & Co. platinum and diamond solitaire ring ($248,403)

   f. One Tiffany & Co. stainless steel Gentleman's Patek Philippe "Aquanaut" watch ($31,430)

   g. One 18 KT white gold medium engraved hinged bangle bracelet ($9,909)

   h. One hand made custom designed ladies diamond bracelet, 4.20 carats black diamonds, 2.42 white diamonds ($14,496)

   i. One pair diamond "studs earrings", 4.08 carats ($47,240)

    j.    One custom designed ladies diamond bracelet, total weight of 37.96 carats ($65,156)

    k.    One pair of 18K yellow gold large inside out hoop earrings ($10,312)

    l.    Patek Phillipe 175th Anniversary watch ($81,611)

    m.    One Tiffany & Co. platinum and diamond ring set ($161,663)

    n.    Jewelers Regulator American Made Case with elaborate fox carving (1880s) ($25,000)

49.    Carnes retains approximately $1.38 million in insured artwork in the name of the MCC trust including the following pieces (and their insured value):

    a.    Kenneth Noland, Untitled ($400,000)

    b.    Robert Indiana, Love ($495,000)

    c.    Milton Avery Painting, Mother and Child ($350,000)

    d.    Wayne Thiebaud, Large Sucker (From Seven Still Lifes and a Rabbit) ($36,000)

    e.    Sean Landers, Tartan Forest 2 ($100,000)

    f.    Chris McCaw, Sunburned GSP#791 (Artic Circle, Alaska) ($16,000)

50.    Carnes also has made investments of approximately $1.9 million in an array of companies and limited partnerships under the name of MCC Trust. The income from these investments are regularly reported on the Carnes' joint income tax return. These investments (based on original amount invested) include:

    a.    Rock Island Capital Fund II, LP ($500,000);

    b.    Clearview Energy, LP ($200,000);

    c.    Bio Daf USA, Inc. ($100,000);

    d.    JEL Resources, LLC (at least $74,000);

    e.   SCM Walla Walla Investors, LLC ($200,000);

    f.   KCH Emerge, LLC ($90,000);

    g.   Mer-Sea & Co, LLC ($500,000);

    h.   Deeyook II, LLC ($100,000);

    i.   Bird Dog Oil, LLC (at least $100,000).

51.    In addition, on August 17, 2020, Carnes, as co-trustee of the MCC Trust, completed a wire transfer of $2,706,478.64 from the MCC Trust account to First Security Bank in Bozeman, MT to fund the purchase of 14 Double Eagle Way, Unit 7005, Big Sky, MT 59716. Carnes, through the MCC Trust, continues to maintain possession of the property at 14 Double Eagle Way, Unit 7005, Big Sky, MT 59716.

52.    The property in question is part of the Yellowstone Club, a private ski mountain, which is by invitation only and caters exclusively to multi-millionaires and billionaires, and requires yearly dues of tens of thousands of dollars.

## Count I
### Fraudulent Transfers Under the Federal Debt Collection Procedures Act, 28 U.S.C. §§ 3304(b)(1)(A), 3306(a)
**(Against James R. Carnes, individually and in his capacity as co-trustee of the JRC Trust, as transferor, and Melissa C. Carnes, individually and in her capacity as co-trustee of the MCC Trust, as transferee)**

53.    The Bureau realleges and incorporates by reference Paragraphs 1-52.

54.    Judgment Debtor Carnes is liable for a debt to the Bureau in excess of $43 million, including for restitution and civil money penalties for violations of the CFPA. This debt constitutes a "debt" under 28 U.S.C. §§ 3002(3)(B) and 3304(b)(1), and Carnes is a "debtor" under 28 U.S.C. §§ 3002(4) and 3304(b)(1).

55. As set forth in Paragraphs 16-43, through four different transfers, Carnes transferred cash and investments to the MCC Trust with actual intent to hinder, delay, or defraud a creditor.

56. Carnes' actual intent to hinder, delay, or defraud a creditor is demonstrated by the allegations in this Complaint, including the following:

   a. Melissa C. Carnes is Carnes' wife and the Settlor/Grantor of the MCC Trust, and the transfers to the MCC Trust were for the benefit of Melissa C. Carnes who is an "insider" within the meaning of 28 U.S.C. §§ 3301(5), 3304(b)(2)(A). *See* Paragraph 8.

   b. After making the First, Second, Third, and Fourth Transfers, Carnes retained control over the assets transferred, including because Melissa C. Carnes granted him power as co-trustee of the MCC Trust, and he directed purchases of assets on behalf of the MCC Trust. 28 U.S.C. § 3304(b)(2)(B). *See* Paragraphs 42, 44-52.

   c. Carnes failed to disclose the First, Second, Third, and Fourth Transfers in response to the Bureau's post-judgment discovery requests on him. 28 U.S.C. § 3304(b)(2)(C). *See* Paragraph 40.

   d. Carnes attempted to further conceal the First, Second, and Third Transfers by attempting to prevent his financial institutions from disclosing them. 28 U.S.C. § 3304(b)(2)(C). *See* Paragraph 41.

   e. At the time of the First, Second, Third, and Fourth Transfers, Carnes had been threatened with suit. 28 U.S.C. § 3304(b)(2)(D). *See* Paragraphs 16-20.

  f. At the time of the Fourth Transfer, the Bureau had filed or was about to file a notice of charges against Integrity Advance and Carnes. 28 U.S.C. § 3304(b)(2)(D). *See* Paragraph 33.

  g. Carnes did not receive reasonably equivalent consideration in exchange for the First, Second, and Third Transfers. 28 U.S.C. § 3304(b)(2)(H). *See* Paragraphs 23, 28, 29, 34.

  h. Carnes removed or concealed assets by purchasing and retaining them in the name of the MCC Trust, rather than his own name. 28 U.S.C. § 3304(b)(2)(G). *See* Paragraphs 43-52.

57. The First, Second, Third, and Fourth Transfers should be adjudged fraudulent and avoidable to the extent necessary to satisfy any judgment for the Bureau, and therefore the United States, 28 U.S.C. § 3002(15)(B), in this proceeding. 28 U.S.C. § 3304(b)(1)(A).

## PRAYER FOR RELIEF

Wherefore, the Bureau requests that the Court enter an order:

1. Issuing writs of attachment, garnishment, and sequestration pursuant to 28 U.S.C. §§ 3101-3105 and any other necessary remedy against the assets transferred or other property of the above named defendants;
2. Enjoining defendants against further disposition of the fraudulently transferred property;
3. Declaring that the First, Second, Third, and Fourth Transfers described in Paragraph 23, 28, 29, and 33 be adjudged fraudulent and avoidable to the extent necessary to satisfy any judgment for the Bureau, under 28 U.S.C. § 3306;
4. Attachment of the property fraudulently transferred described above;
5. Judgment liens on the property fraudulently transferred described above;

6. Garnishment of the proceeds of the fraudulent transfers described above;

7. Directing the levy and execution of the judgment by the United States Marshal or his representative, under 28 U.S.C. §§ 3306 and 2001, upon sequestration of any proceeds of the fraudulent transfers described above, with the proceeds to be applied to the judgment in *CFPB v. Integrity Advance, LLC, et al.*, 21-mc-206 (D. Kan.) due the Bureau, together with interest to the date of the payment, plus costs and disbursements of this action, or alternatively, appointing a receiver to identify and conduct the sale of assets held by the MCC Trust, and thereafter pay over the proceeds of such sale to the Bureau in partial satisfaction of the judgment against Carnes in *CFPB v. Integrity Advance, LLC, et al.*, 21-mc-206 (D. Kan.);

8. Granting a judgment lien on 14 Double Eagle Way, Unit 7005, Big Sky, MT 59716, which is real property in Madison County, Montana currently under the name of the MCC Trust; and

9. Awarding a money judgment against the Melissa C. Carnes Revocable Trust and Melissa C. Carnes for the value of the respective property and/or funds received as a transferee of fraudulent conveyances of the property of Carnes.

## REQUEST FOR TRIAL

Comes Now the Plaintiff, Consumer Financial Protection Bureau, and hereby requests a trial on all issues raised herein to be held in Kansas City, Kansas.

ERIC HALPERIN
Enforcement Director

DEBORAH MORRIS
Deputy Enforcement Director

15

Dated: April 5, 2023  /s/   Bradley H. Cohen
BRADLEY H. COHEN (D.C. 495145)
STEPHEN C. JACQUES (D.C. 464413)
TIFFANY N. HARDY (D.C. 486240)

Senior Litigation Counsel
Consumer Financial Protection Bureau
1700 G Street, N.W.
Washington, D.C. 20552
Phone: 202-435-9280
Email: bradley.cohen@cfpb.gov

KATE E. BRUBACHER
United States Attorney

s/ Wendy A. Lynn
WENDY A. LYNN
CHRISTOPHER ALLMAN
KS S. Ct. No. 296768
KS S. Ct.  No. 14225
Assistant U.S. Attorneys
500 State Avenue, Suite 360
Kansas City, KS 66101
Tel.  913-551-7630
Fax 913-551-6541
Wendy.Lynn@usdoj.gov

**ATTORNEYS FOR THE CONSUMER FINANCIAL PROTECTION BUREAU**