UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CONSUMER FINANCIAL PROTECTION
BUREAU,

       Plaintiff,

       v.

JAMES R. CARNES, et al.,

       Defendants.

Case No. 23-cv-2151-DDC-TJJ

**MEMORANDUM AND ORDER**

Plaintiff Consumer Financial Protection Bureau has filed a Motion to Compel Defendants' Discovery Responses (ECF No. 122). Plaintiff requests the Court find Defendants have waived attorney-client privilege for eighteen documents identified on their privilege logs and compel production of those documents. Defendants oppose the motion and dispute the waiver argument. As explained below, the Court grants in part and denies in part the motion.

**I.    Facts and Procedural Background**

Plaintiff brings this action[1] against Defendants James R. Carnes, Melissa C. Carnes, the James R. Carnes Revocable Trust ("JRC Trust"), and the Melissa C. Carnes Revocable Trust ("MCC Trust") to avoid fraudulent transfers totaling more than $12 million, allegedly intended to shield assets during an investigation into, and subsequent administrative action against James Carnes and his business. Plaintiff alleges James Carnes made four fraudulent transfers to his wife's trust, the MCC Trust, with "actual intent to hinder, delay, or defraud a creditor" in violation of 28

---

[1] The action is brought pursuant to the Federal Debt Collection Procedures Act of 1990, 28 U.S.C. §§ 3001-3308.

U.S.C. § 3304(b)(1)(A). James Carnes authorized the first transfer (of $2.2 million) in June 2013, the second ($7 million) and third ($3.1 million) transfers in December 2013, and the fourth transfer in November 2015. The first three transfers ("the subject transfers") are the subject of the discovery requests and responses pivotal to the discussion here.

Plaintiff's First Interrogatory 2 asked Defendants to describe why the subject transfers were made or authorized and to state any consideration given or received in exchange for them.[2] Melissa Carnes objected to Interrogatory 2 and stated she did not make or authorize the transfers. James Carnes answered Interrogatory 2 as follows:

> James Carnes authorized the First Transfer, Second Transfer, and Third Transfer to maximize the estate tax exemption available to himself and his wife, Melissa Carnes, as a married couple. **The First Transfer, Second Transfer, and Third Transfer were part of a holistic estate and tax plan**. James Carnes authorized the First Transfer in June 2013 and the Second and Third Transfers in December 2013, all well before he learned CFPB was investigating or intended to file charges against him personally.
>
> **When James Carnes authorized the three transfers, dividing assets between two spouses was a common estate planning strategy**. In most cases, there was no gift tax applicable to inter vivos gifts between spouses, and **dividing assets allowed a married couple to maximize their collective estate tax exemptions**. CFPB has alleged that James Carnes received more than $20 million from the December 2012 sale of certain assets of Integrity Advance. . . . In 2013, through the First, Second, and Third Transfers, James Carnes transferred approximately half of that value, $12,317,325.00, from his trust (the JRC Trust) to his wife's trust (the MCC Trust).[3]

Plaintiff's Interrogatory 3 asked Defendants to identify "all financial advisors, bankers, estate planning advisors, and any other Persons who provided financial planning or estate planning

---

[2] Exs. A, C to Pl.'s Mot., ECF No. 123-2, at 4 & 20.

[3] Def. James Carnes' Ans. to Pl.'s First Set of Interrogs., Ex. C, ECF No. 123-2, at 20–21 (bold added). In her supplemental response to Interrogatory 2, Melissa Carnes essentially adopted the language in James Carnes' answer to Interrogatory 2 regarding the reason for the subject transfers. Def. Melissa Carnes' Supp. Ans. to Pl.'s First Interrogs., Ex. I, ECF No. 123-2, at 75.

2

advice [to Defendants or their dependents] between February 2010 and September 2023 (including . . . any law firms . . .)".[4] James Carnes objected and then listed two attorneys, Jason Reschly and Scott Martinsen, who provided financial planning or estate planning advice to him and the JRC Trust between February 2010 and September 2023.[5] He later supplemented his response and listed six additional attorneys who "provided financial planning or estate planning advice to him" between those same dates.[6]

In response to Plaintiff's First RFPs 3–5, requesting production of "[a]ll Documents relating to the purpose, reason, or consideration for" the subject transfers, Defendants objected but stated they would "produce any nonprivileged documents" responsive to the requests, which included their entire estate plan.[7] Defendants thereafter produced three trust-creation documents with amendments and their wills with related attachments.[8] Defendants also produced the single page cover sheet for their "Estate Plan."[9] In James Carnes' supplemental responses to RFPs 3–5, he specifically refers Plaintiff to the "produced documents that relate to tax and estate planning."[10]

Following up on Defendants' response to Interrogatory 2, Plaintiff served Interrogatory 4,

---

[4] Def. James Carnes' Supp. Ans. & Objs. to Pl.'s First Set of Interrogs., Ex. K, ECF No. 123-2, at 92–93.

[5] *Id.* at 94–95.

[6] *Id.* at 96–97.

[7] Def. James Carnes' Resps. to Pl.'s First Set of RFPs, Ex. D, ECF No. 123-2, at 29–30; Melissa Carnes' Resps., Ex. B, ECF No. 123-2, at 13–14.

[8] Pl.'s Mot., ECF No. 122, at 4 n.1.

[9] ECF No. 131-3.

[10] Def. James Carnes' Supp. Resps. to Pl.'s First Set of RFPs, Ex. L, ECF No. 123-2, at 106–109; Melissa Carne objects and then states in her supplemental responses to RFPs 3–5 that "privilege documents are being withheld and have been logged." Ex. J, ECF No. 123-2, at 83–84.

which asked Defendants to "[d]escribe the 'holistic estate and tax plan,' including identifying the components of this plan, when the plan was created or amended, how the plan was documented, who created the plan, the plan objectives, and how the Transfers allowed [James] and Melissa Carnes to 'maximize [their] collective estate tax exemptions.'" After objecting, James Carnes answered as follows:

> James Carnes states that the components of the estate plan have been produced to CFPB and include the documents with the following beginning Bates numbers . . . These documents identify the dates the components of the plan were created and amended, and they document the plan.
>
> **The estate plan was created by the law firm of Husch Blackwell LLP, and primarily attorneys Jason Reschly and Scott Martinsen.** James Carnes's purposes for creating an estate plan were to provide for his [wife] and children in the event of his death, to create living wills, and to minimize the tax impacts of post-death transfers of assets. James Carnes anticipates that any discussion of the typical goals of estate plans at or around the time this estate plan was created will be the subject of expert testimony.
>
> James Carnes states that his response to Interrogatory No. 2 already explains that the First, Second, and Third Transfers had the effect of dividing assets between himself and Melissa Carnes and, when James Carnes authorized these transfers, dividing assets between spouses was a common estate planning strategy because it allowed spouses to maximize their collective estate tax exemptions. James Carnes anticipates that any further discussion of common estate planning strategies around the time the transfers were made and the benefits of dividing assets between spouses will be the subject of expert testimony.[11]

Defendants subsequently served supplemental responses to some of their discovery responses and served their privilege logs asserting both attorney-client privilege and work product protection.[12] After further conferring efforts, Defendants provided amended final privilege logs

---

[11] Def. James Carnes' Ans. & Objs. to Pl.'s Second Set of Interrogs., Ex. S, ECF No. 123-2, at 162–63 (bold added). Melissa Carnes answer to Interrogatory 4 referenced "MCarnes000097-142, JCARNES000001-87, JCARNES000151-201, estate documents and amendments which have already been produced." Ex. Q, ECF No. 123-2, at 139–40.

[12] Exs. M and N, ECF No. 123-1, at 115–21.

4

withdrawing their work product objections.[13]

## II.     Documents for which Plaintiff Seeks Waiver of Defendants' Attorney-Client Privilege

In its motion to compel, Plaintiff argues Defendants have waived attorney-client privilege with respect to eighteen documents by placing them "at issue" through their affirmative acts. Following is the pertinent information from Defendants' respective privilege logs for the eighteen documents Plaintiff contends Defendants have waived attorney-client privilege:

| Doc ID[14] | Date | From | To | Email Subject/File Name | Privilege Description |
|---|---|---|---|---|---|
| UNICTRL00000030 (IRE0000072) | 9/9/2010 | Scott K. Martinsen, Husch Blackwell | James and Melissa Carnes | Re: Estate Planning Documents | Letter prepared by Scott Martinsen memorializing legal advice provided to James Carnes and Melissa Carnes regarding estate planning. |
| UNICTRL00000069 (IRE0000094) | Sept. 2010 | Scott K. Martinsen, Husch Blackwell | James and Melissa Carnes | Memorandum RE: Disposition of Tangible Property at Death by List | Memorandum prepared by Scott Martinsen memorializing legal advice provided to James and Melissa Carnes regarding estate planning. |
| UNICTRL00000212 (IRE0000058) | Sept. 2010 | Scott K. Martinsen, Husch Blackwell | James and Melissa Carnes | RE: Transfer of Assets to Revocable Trust | Letter prepared by Scott Martinsen memorializing legal advice provided to James Carnes and Melissa Carnes regarding estate planning |
| UNICTRL00000045 (IRE0000085) | Undated | Husch Blackwell | James and Melissa Carnes | Summary of Last Will of James R. Carnes | Memorandum prepared by Husch Blackwell law firm memorializing legal advice provided to |

---

[13] Exs. U and V, ECF No. 123-1, at 190–97.

[14] Melissa Carnes identifies documents on her privilege log with numbers preceded with "UNICTRL" while James Carnes identifies documents on his privilege log with numbers preceded with "IRE." This chart is included here as a summary of Defendants' privilege logs and does not include all information and columns in those logs attached as Exhibits U and V, ECF No. 123-2, at 190–97.

| Doc ID[14] | Date | From | To | Email Subject/File Name | Privilege Description |
|---|---|---|---|---|---|
| | | | | | James and Melissa Carnes regarding estate plan |
| UNICTRL00000057 (IRE0000089) | Undated | Husch Blackwell | | Summary of Last Will of Melissa C. Carnes | Memorandum prepared by Husch Blackwell law firm memorializing legal advice provided to James and Melissa Carnes regarding estate planning. |
| UNICTRL00000075 (IRE0000096) | Undated | Husch Blackwell | James and Melissa Carnes | Outline of Revocable Trust Agreement – JRC Trust | (same) |
| UNICTRL00000085 (IRE0000098) | Undated | Husch Blackwell | James and Melissa Carnes | Outline of Revocable Trust Agreement – MCC Trust | (same) |
| UNICTRL00000223 (IRE0000060) | Undated | Husch Blackwell | James and Melissa Carnes | Outline of Irrevocable Trust Agreement – Carnes Family Irrevocable Trust | (same) |
| UNICTRL00000041 | Undated | Husch Blackwell | James and Melissa Carnes | Outline of Jim and Melissa Carnes Estate Plan | (same) |
| | | | | | |
| IRE0001153 | 1/22/2013 | Kirstin Pace Salzman | James Carnes and Edward Foster | [No Subject] | Confidential communications between James Carnes, Edward Foster, and attorney Kirstin Pace Salzman regarding EZ Corp. transaction |
| IRE0001167 | 1/10/2013 | Kirstin Pace Salzman | James Carnes | Docs | Confidential communication between James Carnes and Kirstin Pace Salzman regarding legal advice about EZ Corp. transaction |
| IRE0001172 | 1/10/2013 | Kirstin Pace Salzman | James Carnes | FW: Carnes .pdf documents | (same) |
| IRE0001173 | 1/10/2013 | | | Compare KCP-#4288902-vdocQuestionnaire_for_ HIP_LLC_-_January_10__2013.pdf | Attachment transmitted by attorney to client reflecting work product of outside counsel. |
| IRE0001174 | 1/10/2013 | | | KCP-#4288852-v3- | (same) |

6

| Doc ID[14] | Date | From | To | Email Subject/File Name | Privilege Description |
|---|---|---|---|---|---|
| | | | | Trust_Certificate.pdf | |
| IRE0001175 | 1/10/2013 | | | KCP-#4288890-v2-Willowbrook_Certificate.pdf | (same) |
| IRE0001176 | 1/10/2013 | | | KCP-#4288902-v2-Questionnaire_for_HIP_LLC_January_10__2013.pd | (same) |
| IRE0001177 | 1/10/2013 | | | KCP-#4288904-v2 Trust_Questionnaire__January_10__2013.pdf | (same) |
| IRE0001178 | 1/10/2013 | | | KCP-#4289051-v1-Form_Stock_Power_with_W9.PDF | (same) |

These privilege log entries can be summarized in two categories: (1) 2010 estate planning advice and (2) the 2013 EZ Corporation transaction. The first category reflects letters and memoranda "memorializing legal advice" to Defendants from their attorneys at or about the time Defendants have indicated their estate plan was created in 2010 and multiple undated entries summarizing Defendants' wills and outlining their trust agreements and estate plan. The second category reflects multiple entries in January 2013 (months prior to the subject transfers in June and December 2013) for emails and attachments purportedly responsive to Plaintiff's discovery requests for "documents relating to the purpose, reason, or consideration for" the transfers.

### III.   Law Regarding At-Issue Waiver of Attorney-Client Privilege

Plaintiff's motion does not challenge Defendants' claim of attorney-client privilege, but instead argues Defendants waived the privilege as to the withheld communications. As this case arises under federal law, federal common law governs attorney-client privilege and any waiver of that privilege.[15] Courts generally apply one of three approaches to determine whether a party has

---

[15] *See* Fed. R. Evid. 501.

waived the attorney-client privilege by placing protected information "at issue."[16] In *Frontier Refining, Inc. v. Gorman-Rupp Co.*,[17] the Tenth Circuit summarized the three approaches as follows:

> The first of these general approaches is the "automatic waiver" rule, which provides that a litigant automatically waives the privilege upon assertion of a claim, counterclaim, or affirmative defense that raises as an issue a matter to which otherwise privileged material is relevant. The second set of generalized approaches provides that the privilege is waived only when the material to be discovered is both relevant to the issues raised in the case and either vital or necessary to the opposing party's defense of the case. Finally, several courts have [] concluded that a litigant waives the attorney-client privilege if, and only if, the litigant directly puts the attorney's advice at issue in the litigation.[18]

The Tenth Circuit has not expressly adopted an approach for assessing at-issue waiver, but it has applied the second intermediate approach, articulated in the Eastern District of Washington case *Hearn v. Rhay*[19] in addressing state law privilege claims.[20] The test set out in *Hearn* has also been applied to federal question actions in this District.[21] And the parties in this case cite the *Hearn* test in their briefing as the applicable law on waiver. The Court finds it appropriate to apply the *Hearn* test to the waiver issue here.

---

[16] *Seneca Ins. Co. v. W. Claims, Inc.*, 774 F.3d 1272, 1275 (10th Cir. 2014).

[17] 136 F.3d 695, 699–700 (10th Cir. 1998).

[18] *Id.* (internal citations omitted).

[19] 68 F.R.D. 574 (E.D. Wash. 1975).

[20] *See Seneca*, 774 F.3d at 1276 (applying *Hearn* because both parties agreed that Oklahoma courts would apply a version of the *Hearn* test); *Frontier Ref.*, 136 F.3d at 701 (applying Wyoming law).

[21] *Martley v. City of Basehor, Kan.*, No. 19-2138-DDC-GEB, 2021 WL 5918916, at *7 (D. Kan. Dec. 15, 2021) (applying *Hearn* in Equal Pay Act case). *See also Sprint Commc'ns Co., L.P. v. Comcast Cable Commc'ns, LLC*, No. 11-2684-JWL, 2015 WL 11121848, at *2 (D. Kan. Apr. 16, 2015) (applying *Hearn* in patent infringement case); *Williams v. Sprint/United Mgmt. Co.*, 464 F. Supp. 2d 1100, 1104 (D. Kan. 2006) (applying *Hearn* in employment case).

Under the *Hearn* test, each of the following three conditions must exist to find waiver: (1) assertion of the privilege was the result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to its defense.[22] A court should find that the party asserting a privilege has impliedly waived that privilege through its own affirmative conduct when the party "places information protected by it in issue through some affirmative act for his own benefit, and to allow the privilege to protect against disclosure of such information would [be] manifestly unfair to the opposing party."[23] Furthermore, "a litigant cannot use the work product doctrine as both a sword and shield by selectively using the privileged documents to prove a point but then invoking the privilege to prevent an opponent from challenging the assertion."[24] It is well-settled that the attorney-client privilege belongs to the client, not the attorney, and "should not be set aside lightly."[25]

"The burden of establishing the applicability of a privilege rests on the party seeking to assert it."[26] Courts in this District have held "[t]he burden of showing that the privilege has not

---

[22] *Hearn*, 68 F.R.D. at 581; *Sprint Commc'ns Co. L.P. v. Charter Commc'ns, Inc.*, 341 F.R.D. 291, 296 (D. Kan. 2022).

[23] *Hearn*, 68 F.R.D. at 581; *Sprint*, 341 F.R.D. at 296.

[24] *Frontier Ref.,* 136 F.3d at 704.

[25] *Watchous Enters., L.L.C. v. Pac. Nat'l Cap.*, No. 16-1432-JTM, 2017 WL 4310231, at *4 (D. Kan. Sept. 28, 2017); *IMC Chemicals, Inc. v. Niro Inc.*, No. 98-2348-JTM, 2000 WL 1466495, at *20 (D. Kan. July 19, 2000) (citations omitted).

[26] *Matter of Grand Jury Subpoena Duces Tecum Issued on June 9, 1982, to Custodian of Recs.*, 697 F.2d 277, 279 (10th Cir. 1983).

been waived remains with the party claiming the privilege."[27] Accordingly, Defendants, as the party asserting the attorney-client privilege here, have the burden to show the asserted privilege has not been waived.

## IV.     At-Issue Privilege Waiver Analysis Under the *Hearn* Test

### A.     Affirmative Act Requirement

Under the first prong of the *Hearn* test, assertion of the privilege must be the result of some affirmative act by the asserting party. Defendants argue this prong is not met because they did not assert attorney-client privilege as a result of their own affirmative act, instead their assertion was reactive in response to Plaintiff's discovery requests. Plaintiff disagrees and argues Defendants' proffered explanations of the reason for the subject transfers—that the transfers were part of their "holistic estate and tax plan" and "estate planning strategy"—and then Defendants' identification of the estate and tax planning documents from their attorneys in response to discovery requests were affirmative and voluntary acts which resulted in Defendants' invocation of attorney-client privilege.

A key issue, if not "the" key issue, in this case is whether Plaintiff can establish James Carnes had the requisite intent to hinder, delay or defraud his creditor when he made the subject transfers to the MCC Trust. Defendants deny this, and as their defense, claim instead that the sole reason James Carnes made the subject transfers was to maximize estate tax exemptions available to them as a married couple and the transfers "were part of a holistic estate and tax plan." In addition, Defendants affirmatively assert that their attorneys provided them estate planning advice

---

[27] *New Jersey v. Sprint Corp.*, 258 F.R.D. 421, 426 (D. Kan. 2009) (citing *Johnson v. Gmeinder*, 191 F.R.D. 638, 643 (D. Kan. 2000)). *But see Frontier Ref.*, 136 F.3d at 701 (placing the burden of establishing waiver of privilege on the party seeking to compel the discovery).

10

and "created" the estate plan upon which they rely. Their attorneys' involvement in creation of the estate plan is borne out by the privilege log entries referenced above. Defendants claim they have produced their entire estate plan[28] in response to requests for production relating to the purpose of the transfers. However, they have withheld privileged communications from their attorneys memorializing, summarizing, and outlining the estate plan, as well as other attorney-client communications around the time of the subject transfers. James Carnes indicated his "purposes for creating an estate plan were to provide for his [wife] and children in the event of his death, to create living wills, and to minimize the tax impacts of post-death transfers of assets."[29] James Carnes also indicated that when he authorized these transfers, "dividing assets between spouses was a common estate planning strategy because it allowed spouses to maximize their collective estate tax exemptions."[30]

The Court finds Defendants' assertion of the attorney-client privilege was the result of Defendants' own affirmative and voluntary acts of putting forth their holistic estate and tax plan defense implicating the estate planning advice received from their counsel prior to the subject transfers.[31] Defendants initiated and interjected this defense, and the corresponding attorney-client

---

[28] Defs.' Resp., ECF No. 127, at 3. In his response to Interrogatory 4, James Carnes identified the components of the estate plan produced to Plaintiff as Bates numbers beginning: JCARNES000001, JCARNES000010, JCARNES000015, JCARNES000016, JCARNES000018, JCARNES000020, JCARNES000024, JCARNES000032, JCARNES000034, JCARNES000036, and JCARNES000152. ECF No. 123-2, at 162–63.

[29] Def. James Carnes' Ans. & Objs. to Pl.'s Second Set of Interrogs., Ex. S, ECF No. 123-2, at 163–64.

[30] *Id.*

[31] *Martley*, 2021 WL 5918916, at *7 ("The privilege is implicitly waived when the party, through its own actions, 'places information protected by it at issue through some affirmative act for his own benefit, and to allow the privilege to protect against such disclosure of such information would [be] manifestly unfair to the opposing party.'").

11

privilege, into the case for their own benefit. Notably, Defendants are not merely asserting a good faith defense, which courts in this District have held would not waive privilege.[32] Rather, they are asserting a broad nonfraudulent estate planning purpose as their defense. Defendants cannot have their cake and eat it, too. It would be "manifestly unfair" to Plaintiff if Defendants were allowed to present evidence of their estate planning defense—through Defendants' interrogatory answers, the estate planning documents produced, and likely future testimony by Defendants that the subject transfers were part of an estate plan created by their attorneys—and yet Defendants were also allowed to claim privilege to foreclose discovery by Plaintiff regarding whether or not this is true.[33]

The Court finds Defendants' argument to the contrary unpersuasive. Defendants cite *Sprint Commc'ns Co. L.P. v. Charter Commc'ns, Inc.*,[34] in support of their argument that asserting attorney-client privilege in response to questioning or discovery requests from an opposing party is not an "affirmative act."[35] Defendants' reliance on *Sprint* for this principal is misplaced in that they cite to the court's discussion of the second *Hearn* prong, not the first affirmative act prong. In any event, while in *Sprint*, it is true that Sprint asserted the attorney-client privilege in response to discovery requests, the reason the court found no affirmative act by Sprint resulting in waiver of the privilege was that it asserted the privilege in response to the statute of limitations defense

---

[32] *See Roadbuilders Mach. & Supply Co. v. Sandvik Mining & Constr. USA, LLC*, No. 2:22-CV-2331-HLT-TJJ, 2023 WL 3790691, at *6 (D. Kan. June 2, 2023) ("Courts in this District have held that merely asserting a good faith defense does not waive privilege."); *Martley*, 2021 WL 5918916, at *8 (same).

[33] *See Martley*, 2021 WL 5918916, at *7, and *S.E.C. v. McNaul*, 277 F.R.D. 439, 444 (D. Kan. 2011) (citing 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 2016.6 (3d ed. 2010) ("When a party puts a privileged matter in issue as evidence in a case, it thereby waives the privilege as to all related privileged matters on the same subject.").

[34] 341 F.R.D. 291, 298 (D. Kan. 2022).

[35] Defs.' Resp., ECF No. 127, at 6–7.

raised by the opposing party.[36] Sprint's assertion of the privilege was not an affirmative act but rather reactive, to rebut its opposition's statute of limitations defense.[37]

In contrast, Defendants in this case asserted the attorney-client privilege as a result of their own affirmative acts of defending Plaintiff's fraud claims by arguing that the alleged fraudulent transfers were made for purposes of their estate plan, which was created by their attorneys and based upon advice of their attorneys. The Court finds the first "affirmative act" prong of the *Hearn* waiver test is satisfied.

### B.     Putting Protected Information at Issue

Under the second *Hearn* prong, the asserting party must have put the protected information at issue by making it relevant to the case. Defendants state they have not used, and do not intend to use, any of the withheld documents to support their defenses, they have not selectively disclosed privileged information, and they have not invoked privileged documents to support their defenses. Instead, Defendants contend they have specifically invoked the estate plan itself, which they have produced to Plaintiff. Defendants also dispute Plaintiff's argument that their estate and tax plan strategy cannot be disentangled from advice they received from their estate planning attorneys, and they suggest a laundry list of questions Plaintiff could ask Defendants about James Carnes' intent and Defendants' estate plan without invading the attorney-client privilege.

Plaintiff argues its claims in this lawsuit had nothing to do with Defendants' estate or tax plans. Rather, Plaintiff argues Defendants have made their estate and tax plan, and the strategy behind that plan, a relevant part of this case by injecting it as their sole, and purportedly non-fraudulent, reason for transferring over $12 million, during an ongoing investigation, into a newly

---

[36] *Sprint Commc'ns*, 341 F.R.D. at 298.

[37] *Id.*

13

established James Carnes' trust account and then into Melissa Carnes' trust account. Plaintiff contends Defendants are trying to counter Plaintiff's evidence by presenting their own evidence of an alleged non-fraudulent purpose behind the subject transfers and in doing so Defendants have made their estate plan and strategy relevant. Moreover, Plaintiff argues Defendants have refused to produce their estate plan or strategy and Defendants' "selective invocation of otherwise privileged information supports a finding of an at issue waiver."[38] Plaintiff notes the only estate planning documents produced by Defendants have been three trust-creation documents with amendments and Defendants' wills with related attachments.[39] Plaintiff also notes nothing in the documents produced by Defendants refers or relates to fund transfers or to any strategy to divide assets between James Carnes and his spouse.

The Court finds Defendants have put protected information at issue by making it relevant to the case and thus satisfied the second *Hearn* prong. Defendants have placed at issue communications from their attorneys about the purpose(s) of the "holistic estate and tax plan" they rely upon for their defense and the reason(s) James Carnes made the subject transfers. As previously discussed, Defendants' attorneys provided Defendants estate planning advice and created the estate plan upon which they rely. Defendants have also produced the trust-creation documents and amendments and wills and related attachments, prepared by their attorneys, in response to the discovery requests seeking the purpose, reason, or consideration of the trust transfers. But, although they claim to "have produced their estate plan, which consists of trusts,

---

[38] ECF No. 122 at 11.

[39] *Id.* at 4 n.1. Defendants seem to agree these are the only estate planning documents they have produced, stating in their Response: "[Plaintiff] even admits in a footnote that Defendants have produced 'three trust-creation documents with amendments and [Defendants] wills with related attachments….' In other words, [Plaintiff] admits Defendants have produced the very estate plan [Plaintiff] claims Defendants refused to produce." ECF No. 127 at 4–5.

14

wills, health care directives, and the like,"[40] Defendants have not produced any document that is labeled "Estate Plan."[41] Nor have they produced the "Outline of Jim and Melissa Carnes Estate Plan" or the "Memorandum prepared by Husch Blackwell law firm memorializing legal advice provided to James and Melissa Carnes regarding estate planning or estate plan," both of which they have withheld as attorney-client privileged. Defendants have put at issue whether and to what extent Defendants received advice from their attorneys regarding their "holistic estate and tax plan."[42] The Court agrees with Plaintiff, and finds Defendants have selectively produced some estate planning documents prepared by their attorneys while withholding others.

Further, as Plaintiff notes, Defendants' estate planning and their reliance on their attorneys who created the plan were not at issue in this case until Defendants made them so. Defendants themselves placed at issue the estate planning communications from their attorneys, which are inextricably merged or intertwined with the intent element of Plaintiff's fraudulent transfer claims and Defendants' defense of those claims.[43] That Defendants put their protected estate planning communications at issue through their discovery responses is not significant to the Court's waiver

---

[40] ECF No. 127 at 2.

[41] Defendants have produced a single page cover page which reads, "James Carnes and Melissa Carnes Estate Plan," which perhaps suggests such a document exists. *See* ECF No. 131-3.

[42] See *McNaul*, 277 F.R.D. at 444 (finding the defendants had placed in issue whether they received advice from the law firm about the investments, securities, and entities in the case by their statements they were following the recommendations and instructions of a law firm and particularly its securities expert).

[43] *See Hearn,* 68 F.R.D. at 582 (finding the content of the defendant's communications with their attorney was inextricably merged with the elements of the plaintiff's case and the defendants' affirmative defense).

analysis notwithstanding Defendants' citation to the *Sprint* case[44] for this prong of the *Hearn* test.[45] While Defendants would like to limit discovery regarding their estate plan to those few trust creation documents and the wills they have produced, withholding the related communications from their attorneys as privileged, it would be manifestly unfair to Plaintiff to foreclose discovery on this critical defense that Defendants have put in issue. Therefore, fairness requires Plaintiff be allowed to examine these protected estate planning communications Defendants have placed at issue.

On a final note relative to this issue, the Court is unpersuaded by Defendants statement that they have not used, and do not intend to use, any of the withheld documents to support their defenses. These are merely self-serving and non-binding representations. Nor do Defendants go so far as to represent that they will not rely on any evidence (or testimony) which would cause them to open the door to an inquiry from Plaintiff which would in turn cause Defendants to assert the privilege.[46] Indeed, as has previously been noted, Defendants in this case are not relying upon a simple good faith defense and counsel for Defendants' involvement and preparation of the estate plan is so inextricably intertwined with Defendants' defense of the key issue here that the Court cannot fathom Defendants could make and adhere to such a commitment in this case.

Again, the Court reiterates that, despite their argument to the contrary, Defendants are attempting to use protected information as both a sword and a shield. Defendants have

---

[44] ECF No. 127, at 7–8 (citing *Sprint Commc'ns*, 341 F.R.D. at 298–99).

[45] *See* discussion distinguishing *Sprint Commc'ns*, 341 F.R.D. at 298, in Section IV.A. above.

[46] This case is distinguishable from *Williams*, 464 F. Supp. 2d at 1107–08, where the court found defendant had not waived the privilege based upon extensive assurances that the defendant would not assert the privilege in furtherance of its good faith defense, including that "it [would] not rely on any evidence which would cause it to open the door to an inquiry from plaintiffs which would then, in turn, case defendant to assert the privilege." *Id.* at 1107.

affirmatively asserted a non-fraudulent purpose behind the subject transfers based upon an estate plan created by their attorneys—to maximize estate tax exemptions as part of a holistic estate and tax plan. They are now attempting to shield responsive estate planning communications from their counsel to prevent Plaintiff from challenging those assertions. The second prong of the *Hearn* test is satisfied.

### C. Denial of Access to Vital Information

The third *Hearn* prong is whether application of the privilege will deny the opposing party access to vital information. The Tenth Circuit has found the term "vital" necessarily implies the "information is available from no other source."[47]

The Court finds allowing Defendants to withhold estate planning communications as privileged will deny Plaintiff access to information vital to its ability to respond to Defendants' assertion of a non-fraudulent purpose behind the subject transfers and which is not available from other sources. This information can only be obtained from James Carnes, Melissa Carnes, and their attorneys. In the absence of a finding of waiver of privilege, Defendants and counsel who drafted the estate plan will likely object and refuse to answer questions on the basis of privilege if deposed. With no other source for this vital information, Plaintiff would be prevented from challenging Defendants' evidence and their asserted reasons for the transfers. Although Defendants stop short of explicitly asserting an "advice of counsel" affirmative defense, what they proffer is this: the reason for the transfers was a "holistic" plan and strategy—which includes advice from their attorneys about, among other things, documents described on the privilege log as "Transfer of Assets to Revocable Trust." In any event, the second intermediate approach set forth in *Hearn* and

---

[47] *Frontier Ref.,* 136 F.3d at 701.

applied here does not require that the litigant directly put the attorney's advice at issue to find at-issue waiver.[48] The Court finds the third "vital information" prong of the *Hearn* test is satisfied.

## V.      Application of Waiver Ruling to Challenged Documents on Privilege Log

The Court finds all three prongs of the *Hearn* waiver test are satisfied here for the following nine estate planning communications listed on Defendants' privilege logs:

| Doc ID | Date | From | To | Email Subject/File Name | Privilege Description |
|---|---|---|---|---|---|
| UNICTRL00000030 (IRE0000072) | 9/9/2010 | Scott K. Martinsen Husch Blackwell | James and Melissa Carnes | Re: Estate Planning Documents | Letter prepared by Scott Martinsen memorializing legal advice provided to James Carnes and Melissa Carnes regarding estate planning. |
| UNICTRL00000069 (IRE0000094) | Sept. 2010 | Scott K. Martinsen Husch Blackwell | James and Melissa Carnes | Memorandum RE: Disposition of Tangible Property at Death by List | Memorandum prepared by Scott Martinsen memorializing legal advice provided to James and Melissa Carnes regarding estate planning. |
| UNICTRL00000212 (IRE0000058) | Sept. 2010 | Scott K. Martinsen Husch Blackwell | James and Melissa Carnes | RE: Transfer of Assets to Revocable Trust | Letter prepared by Scott Martinsen memorializing legal advice provided to James Carnes and Melissa Carnes regarding estate planning |
| UNICTRL00000045 (IRE0000085) | Undated | Husch Blackwell | James and Melissa Carnes | Summary of Last Will of James R. Carnes | Memorandum prepared by Husch Blackwell law firm memorializing legal advice provided to James and Melissa Carnes regarding estate plan |
| UNICTRL00000057 (IRE0000089) | Undated | Husch Blackwell | | Summary of Last Will of Melissa C. Carnes | Memorandum prepared by Husch Blackwell law firm memorializing legal |

---

[48] *See Frontier Ref.*, 136 F.3d at 699–700 (summarizing the three general approaches to privilege waiver).

| Doc ID | Date | From | To | Email Subject/File Name | Privilege Description |
|---|---|---|---|---|---|
| | | | | | advice provided to James and Melissa Carnes regarding estate planning. |
| UNICTRL00000075 (IRE0000096) | Undated | Husch Blackwell | James and Melissa Carnes | Outline of Revocable Trust Agreement – JRC Trust | Memorandum prepared by Husch Blackwell law firm memorializing legal advice provided to James and Melissa Carnes regarding estate planning |
| UNICTRL00000085 (IRE0000098) | Undated | Husch Blackwell | James and Melissa Carnes | Outline of Revocable Trust Agreement – MCC Trust | (same) |
| UNICTRL00000223 (IRE0000060) | Undated | Husch Blackwell | James and Melissa Carnes | Outline of Irrevocable Trust Agreement – Carnes Family Irrevocable Trust | (same) |
| UNICTRL00000041 | Undated | Husch Blackwell | James and Melissa Carnes | Outline of Jim and Melissa Carnes Estate Plan | (same) |

With respect to the nine documents relating to the 2013 EZ Corporation transaction,[49] Defendants claim these privileged documents do not relate to the purpose or strategy of their estate plan. The Court cannot determine from the descriptions on the privilege log whether these documents are part of the advice sought and received concerning Defendants' estate plan and therefore would fall within the scope of waiver. Plaintiff seems to acknowledge this concern and suggests the Court could conduct an *in camera* review of these documents to determine whether they fall within the scope of the waiver. The Court agrees with Plaintiff's suggestion of an *in camera* review of these nine documents. The Court therefore directs Defendants to submit all nine of these documents to the Court for an *in camera* review. The Court will review the documents and issue a subsequent order with its determination whether they are included within the scope of

---

[49] Identified on James Carnes' privilege log as IRE0001153, IRE0001167, IRE0001172–1178.

the privilege waiver.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Compel Defendants' Discovery Responses (ECF No. 122) is granted in part and denied in part. Defendants' attorney-client privilege is waived as to the nine estate planning communications identified in the privilege log entries set forth in Section V above, and Defendant is ordered to produce these documents to Plaintiff no later than **March 22, 2024**.

**IT IS FURTHER ORDERED** that Defendants shall submit the nine documents relating to the 2013 EZ Corporation transaction, identified on James Carnes' privilege log as IRE0001153, IRE0001167, IRE0001172–1178, for an *in camera* review by **March 18, 2024**.[50]

IT IS SO ORDERED.

Dated March 11, 2024, at Kansas City, Kansas.

*Teresa J. James*
Teresa J. James
U. S. Magistrate Judge

---

[50] Hard copies of the documents to be submitted for the *in camera* review may be delivered to the undersigned Magistrate Judge's chambers or the documents may be submitted electronically in .pdf format to *ksd_james_chambers@ksd.uscourts.gov*.