UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU,<br><br>Plaintiff,<br><br>v.<br><br>JAMES R. CARNES, et al.,<br><br>Defendants. | Case No. 23-cv-2151-DDC-TJJ |

# MEMORANDUM AND ORDER

This matter is before the Court on Defendant Melissa Carnes' Motion to Compel (ECF No. 125). She requests the Court overrule Plaintiff's objections, compel production of discovery responsive to her first set of discovery requests, and order Plaintiff to provide a more thorough privilege log. Plaintiff opposes the motion. As explained below, the Court grants in part and denies in part the motion.

**I.   Facts and Procedural Background**

Plaintiff filed this action[1] on April 5, 2023 against Defendants James R. Carnes, Melissa C. Carnes, the James R. Carnes Revocable Trust ("JRC Trust"), and the Melissa C. Carnes Revocable Trust ("MCC Trust"). Plaintiff seeks to avoid four allegedly fraudulent transfers

---

[1] The action is brought pursuant to the Federal Debt Collection Procedures Act of 1990, 28 U.S.C. §§ 3001-3308 ("FDCPA")("Fraudulent Transfer Action"). Prior to this action, the Consumer Financial Protection Bureau's Director issued a Final Order on January 11, 2021, requiring Integrity Advance, LLC ("Integrity Advance") and James Carnes to pay restitution in the amount of $38 million; with a $5 million civil penalty against James Carnes and a $7.5 million penalty against Integrity Advance ("Administrative Proceedings"). On May 19, 2021, Plaintiff filed a miscellaneous action seeking an order and judgment enforcing its Final Order, Case 21-mc-206-DDC-TJJ ("Judgment Enforcement Action").

totaling more than $12 million,[2] which Plaintiff claims were intended to shield assets during an investigation into and subsequent Administrative Proceedings against James Carnes and his business, Integrity Advance. In this case, Melissa Carnes asserted an affirmative defense that Plaintiff's claims are barred by the statute of limitations and filed a motion to dismiss. On September 20, 2023, District Judge Crabtree denied Ms. Carnes' motion to dismiss based upon her statute of limitations argument. The court found Plaintiff's Complaint, filed on April 5, 2023, alleged enough facts to draw the reasonable inference that Plaintiff "discovered the four fraudulent transfers on some date after the Bureau's Final Order on April 7, 2021" and therefore the action was within the FDCPA's two-year statute of limitations.[3]

Pertinent to this motion, Ms. Carnes served her First Set of Interrogatories and First Set of Requests for Production of Documents ("RFPs") on October 11, 2023.[4] Plaintiff served its initial objections and responses on November 13, 2023.[5] It served supplemental interrogatory objections and answers on December 15, 2023,[6] and supplemental RFP responses and objections on January 5, 2024.[7] Plaintiff also provided a six-page privilege log listing sixteen entries for responsive

---

[2] These four transfers occurred June 3, 2013, December 5, 2013, December 19, 2013, and November 18, 2015. Compl., ECF No. 1, ¶¶ 23, 28, 29, 33.

[3] Mem. & Order, ECF No. 69, at 25. April 7, 2021 was the Final Order's new effective date after it was stayed to permit James Carnes and Integrity Advance to seek a stay from the Court of Appeals. *Id.* at 6.

[4] *See* Certificate of Service, ECF No. 79.

[5] *See* Certificate of Service of Disc., ECF No. 88.

[6] Pl.'s Supp. Objs. and Ans. to Melissa Carnes' First Set of Interrogs., ECF No. 125-2.

[7] Pl.'s Supp. Resps. and Objs. to Melissa Carnes' First Set of RFPs, ECF No. 125-3.

documents withheld from production.[8]

## II. Relief Sought in Ms. Carnes' Motion to Compel

In her motion to compel, Ms. Carnes requests the Court (1) overrule Plaintiff's "boilerplate objections and objections asserted with answers;" (2) compel production of the CLEAR and Accurint Reports responsive to RFP 1; (3) compel production of drafts and communications regarding media and public statements responsive to RFP 16; and (4) compel production of a more thorough privilege log. The Court will discuss each request separately below.

### A. Boilerplate Objections and Conditional Discovery Responses

Ms. Carnes makes a generic global argument that Plaintiff has asserted "boilerplate objections throughout" its discovery responses and these objections should be overruled. In response, Plaintiff maintains its objections are not boilerplate, each objection is linked to a specific interrogatory or RFP, and its responses indicate whether information or documents are being withheld. Plaintiff also argues that Ms. Carnes does not identify a single specific example of a boilerplate objection, but instead just states broadly that Plaintiff has asserted boilerplate objections throughout.

Federal Rule of Civil Procedure 37(a)(3)(B) permits a party seeking discovery to move for an order compelling an answer, designation, production, or inspection. The motion may be made if a party fails to produce documents as requested under Rule 34[9] or fails to answer an interrogatory submitted under Rule 33.[10] An evasive or incomplete disclosure, answer, or response is treated as

---

[8] Privilege log, ECF No. 125-6.

[9] Fed. R. Civ. P. 37(a)(3)(B)(iv).

[10] Fed. R. Civ. P. 37(a)(3)(B)(iii).

a failure to disclose, answer, or respond.[11] The party filing the motion to compel need only file the motion and draw the court's attention to the relief sought.[12] At that point, the burden is on the nonmoving party to support its objections with specificity and, where appropriate, with reference to affidavits and other evidence.[13]

Boilerplate objections are those that repeatedly raise the same monotonous and conclusory objections to discovery requests, such as vague, overly broad, burdensome, or not relevant, without containing any substantive discussion, explanation, or support for the objections.[14] The court looks with disfavor on conclusory or boilerplate objections.[15] Such objections merely state the legal grounds for the objection and do not provide the requesting party or the court any way to evaluate the validity of the objection or whether information is being withheld pursuant to the objection.[16]

Applying these legal standards, the Court finds Ms. Carnes has not met her initial burden of drawing the Court's attention to the relief she seeks in her motion. In *Ehrlich v. Union Pacific Railroad Co.*,[17] the case Ms. Carnes cites in her motion, the plaintiff met her initial burden by

---

[11] Fed. R. Civ. P. 37(a)(4).

[12] *Williams v. Sprint/United Mgmt. Co.*, No. 03-2200-JWL, 2005 WL 731070, at *4 (D. Kan. Mar. 30, 2005).

[13] *Id.*

[14] *See Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*, No. 13-2150-CM-KGG, 2014 WL 2815515, at *4 (D. Kan. June 23, 2014) (finding that repeating the same monotonous objections to discovery requests—such as vague, overly broad, burdensome, or not relevant—without any substantive discussion in response to virtually every discovery request was the "epitome of boilerplate objections").

[15] *No Spill, LLC v. Scepter Candada, Inc.*, No. 2:18-CV-2681-HLT-KGG, 2021 WL 5906042, at *6 (D. Kan. Dec. 14, 2021).

[16] *Zone Five, LLC v. Textron Aviation, Inc.*, No. 20-1059-DDC-KGG, 2023 WL 5206046, at *5 (D. Kan. Aug. 14, 2023).

[17] 302 F.R.D. 620, 624 (D. Kan. 2014).

identifying the particular requests for production at issue in the motion, specifically identifying the objections the defendant lodged to those discovery requests as boilerplate-style objections, and asking the court to overrule those objections.[18] Unlike the party moving to compel in *Ehrlich*, Ms. Carnes instead makes a generic and global argument that Plaintiff has asserted "boilerplate objections throughout" its discovery responses without identifying or directing her argument toward specific discovery responses. In the absence of any reference to specific discovery objections in her motion, the Court is left to guess which ones she challenges as boilerplate. The Court could deny Ms. Carnes' request to overrule Plaintiff's boilerplate objections on this basis alone. But there is no need to do so here as the Court finds *none* of Plaintiff's eleven interrogatory and seventeen RFP responses, attached as exhibits to Ms. Carnes' motion, to be a conclusory, unsupported boilerplate objection. Rather the majority of them contain substantive and lengthy discussion of their responses and objections with individualized factual analysis particularized to the specific request. Ms. Carnes' global request for the Court to overrule Plaintiff's "boilerplate objections throughout" to her first set of discovery requests is therefore denied.

Ms. Carnes also asks the Court to overrule Plaintiff's conditional "subject to" objections or "objections asserted with answers." A conditional response or objection to a discovery request occurs when a party asserts objections but then provides a response "subject to" and/or "without waiving" the stated objections.[19] Such conditional objections make it impossible to discern what part or nature of the documents requested the responding party intends to produce or what it may

---

[18] *Id.*

[19] *Zone Five,* 2023 WL 5206046, at *4; *Duffy v. Lawrence Mem'l Hosp.*, No. 2:14-CV-2256-SAC-TJJ, 2016 WL 7386413, at *2 (D. Kan. Dec. 21, 2016).

be withholding based upon one of the many privileges or objections asserted.[20] Objections to requests for production of documents may also run afoul of Fed. R. Civ. P. 34(b)(2)(C) if they fail to state whether any responsive materials are being withheld on the basis of the objections.[21]

Again, in her motion, Ms. Carnes generally does not identify or discuss the specific discovery responses she challenges as containing improper conditional objections.[22] She has therefore not met her initial burden of drawing the Court's attention to the specific conditional objections she is asking the Court to overrule. Ms. Carnes' global request for the Court to overrule Plaintiff's "subject to" objections to her first set of discovery requests is therefore denied.

### B.    RFP 1 (CLEAR and Accurint Reports)

Ms. Carnes' motion requests Plaintiff be compelled to produce CLEAR and Accurint reports responsive to RFP 1, which asks Plaintiff to produce documents pertaining to Plaintiff's investigation of Integrity Advance, James Carnes, the JRC Trust, Melissa Carnes, and the MCC Trust prior to April 5, 2023. From the briefing, it appears Plaintiff has agreed[23] to produce redacted CLEAR and Accurint reports with social security numbers, dates of birth, and phone numbers redacted, but Ms. Carnes wants complete unredacted reports with no explanation how this

---

[20] *Cadence Educ., LLC v. Vore*, No. 17-CV-2092-JTM-TJJ, 2018 WL 690993, at *3 (D. Kan. Feb. 2, 2018).

[21] *See* Fed. R. Civ. P. 34(b)(2)(C) ("An objection must state whether any responsive materials are being withheld on the basis of that objection.").

[22] Ms. Carnes does reference Plaintiff's responses to Interrogatories 1 and 3 in a footnote in her reply as examples of improper conditional responses. ECF No. 134, at 2 n.1. Because Plaintiff first argued these interrogatory responses were improper conditional objections in her reply, the Court will not consider them. *In re Bank of Am. Wage & Hour Emp. Pracs. Litig.*, 275 F.R.D. 534, 537 (D. Kan. 2011) ("Generally, the Court will not consider relief requested for the first time in a reply brief.").

[23] *See* Resp., ECF No. 132, at 2 n.1 ("The Bureau agrees to produce redacted reports."); Reply, ECF No. 134, at 2 ("The Bureau has now agreed to produce *redacted* CLEAR and Accurint reports.") (emphasis in original).

information is relevant or necessary to her defenses in this case. The Court agrees with Plaintiff that this sensitive and irrelevant information should be redacted prior to production. The Court therefore grants Ms. Carnes' motion to compel this discovery subject to redactions. If it has not already done so, Plaintiff shall produce the requested CLEAR and Accurint reports responsive to RFP 1, with redactions limited to social security numbers, dates of birth, and phone numbers, within fourteen (14) days of this Memorandum and Order.

### C. RFP 16 (Drafts and Communications regarding Media and Public Statements)

Ms. Carnes' motion next requests Plaintiff be compelled to produce documents responsive to RFP 16, which seeks "[d]ocuments and communications regarding Media or public statements by the CFPB regarding Integrity Advance, James Carnes, JRC Trust, Melissa Carnes, and MCC Trust."[24] Plaintiff served the following initial response to RFP 16:

> The Bureau objects to this Request as irrelevant to any claim or defense in this action and as overly broad, unduly burdensome, and disproportionate to the needs of the case. In addition, the Bureau further objects to this Request because it seeks documents that are internal to the Bureau that would reveal the work product of Bureau attorneys, including internal pre-decisional and deliberative information, thought processes, and mental impressions; deliberations and analyses of Bureau personnel; and attorney-client communications. Such information is respectively protected by the attorney work product doctrine and the deliberative process privilege and attorney-client privilege.[25]

Subject to its objections, Plaintiff references its response to RFP 15, which states it maintains information, including links to press releases, on its website.[26]

Thus, it appears Plaintiff has provided Ms. Carnes the website address so that she can

---

[24] Pl.'s Supp. Resps. & Objs. To Def. Melissa Carnes' First Set of Req. for Produc., ECF No. 125-3, at 14.

[25] *Id.* at 14–15.

[26] *Id.* at 15.

access responsive public statements and press releases, which are publicly available. But Ms. Carnes argues the Court should overrule Plaintiff's objections to producing its non-public drafts and communications regarding media and public statements because Plaintiff has issued multiple public statements regarding its action against Integrity Advance and James Carnes, as well as its action against Ms. Carnes and her trust.

Plaintiff argues Ms. Carnes makes no argument and has not demonstrated how the requested materials are relevant. It contends internal Bureau correspondence and drafts regarding press releases can have no possible bearing on or relevance to the claims or defenses in this case. Plaintiff also asserts that, in addition to not being relevant, the requested materials are squarely within the deliberative process privilege.

Federal Rule of Civil Procedure 26(b)(1) sets out the general scope of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

The information sought must be nonprivileged, relevant, and proportional to the needs of the case to be discoverable.[27]

For discovery purposes, relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on," any party's claim or defense.[28] Relevance is often apparent on the face of the discovery request and often dictates which party

---

[27] *No Spill, LLC*, 2021 WL 5906042, at *3.

[28] *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

bears the burden of showing either relevancy or the lack thereof. If the discovery sought appears relevant, the party resisting discovery has the burden to establish the lack of relevancy by demonstrating that the requested discovery (1) does not come within the scope of relevancy as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevancy that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.[29] Conversely, when the relevancy of the discovery request is not readily apparent on its face, the party seeking the discovery has the burden to show the relevancy of the request.[30] Relevancy determinations are generally made on a case-by-case basis.[31]

The Court finds the relevance of Plaintiff's non-public documents and communications *regarding* media or public statements requested in RFP 16 (distinct from the public statements themselves, which have already been made available) is not apparent on its face. Thus, Ms. Carnes, as the party seeking the discovery, bears the burden to show the relevance of the discovery sought. In her motion and reply, she makes the conclusory argument that comments and potential admissions made by Plaintiff regarding this action are "highly relevant," but never explains how so. She speculates that given Plaintiff's arguments and testimony to date regarding its disdain for payday lenders, the requested documents may shed light on potential bias or government misconduct, or that responsive documents could pertain to issues in the law and regulations at issue.

None of Ms. Carnes' arguments convince the Court that Plaintiff's non-public drafts and

---

[29] *Brecek & Young Advisors, Inc. v. Lloyds of London Syndicate 2003*, No. 09-CV-2516-JAR, 2011 WL 765882, at *3 (D. Kan. Feb. 25, 2011).

[30] *Id.*

[31] *Id.*

9

communications regarding media and public statements are relevant to any of the claims or defenses in this case. The Court therefore sustains Plaintiff's relevance objection to RFP 16.[32] Even were the Court to find some marginal relevance, the requested discovery is disproportionate to the needs of this case and would likely be shielded from discovery under the deliberative process privilege.

### D. Sufficiency of Plaintiff's Privilege Log

Ms. Carnes' final request is that the Court compel Plaintiff to provide a more thorough and detailed privilege log and extend her deadline for bringing any issues surrounding such log to the Court. She argues Plaintiff's privilege log does not comport with basic requirements or provide sufficient information to assess the validity of the asserted privileges. Ms. Carnes acknowledges this may be a situation where certain items could be categorized rather than identified line by line. However, in its current state, she argues she is unable to meaningfully challenge any claimed privilege over the withheld documents. Ms. Carnes claims the responsive documents withheld by Plaintiff and identified by aggregating thousands of documents into categories on its privilege log are relevant to her statute of limitations defense.

Plaintiff maintains it has provided a sufficient privilege log by categorically objecting to the wholesale production of its internal attorney-client communications. It argues Ms. Carnes' discovery requests specifically targeted these communications with her discovery requests, and

---

[32] Plaintiff's response to RFP 16 fails to state whether documents are being withheld on the basis of an objection as required by Fed. R. Civ. P. 34(b)(2)(C). However, the last entry on Plaintiff's privilege log describes the withheld documents responsive to RFP 16 as "predecisional and deliberative internal Bureau drafts and communications, regarding media or public statements by [Plaintiff] regarding Integrity Advance, James Carnes, JRC Trust, Melissa Carnes, and MCC Trust." ECF No. 125-6. Plaintiff's privilege log thus makes it clear that Plaintiff is withholding documents responsive to RFP 16 and no further supplementation of RFP 16 is necessary. In any event, the Court sustains Plaintiff's relevance objection to RFP 16. Any argument regarding the sufficiency of the privilege log with respect to RFP 16 is therefore moot.

the Court should find that, under these circumstances, the "categorical" privilege log it provided is appropriate. Plaintiff attaches the Declaration of its senior litigation counsel, Trishanda Treadwell, in support of its categorical privilege log and the manner in which Plaintiff has grouped and described the responsive documents by categories. Plaintiff states each category indicates the volume of responsive communications to demonstrate the unreasonableness of providing a line-by-line privilege log when the only withheld communications are Plaintiff's internal communications and work product.

### 1. Discovery Requests at Issue on the Privilege Log

Before turning directly to the sufficiency of Plaintiff's privilege log, the Court first notes the majority of the categorical descriptions are for documents responsive to Ms. Carnes' RFPs 1, 2, 3, and 13.[33] RFP 1 requests Plaintiff produce documents pertaining to its investigation of James Carnes, Melissa Carnes, their trusts, and Integrity Advance prior to April 5, 2023. RFP 2 seeks communications prior to April 5, 2023 regarding the fraudulent transfers. RFP 3 asks Plaintiff to produce communications it had with anyone other than itself and counsel for Ms. Carnes and her trust regarding the fraudulent transfers. RFP 13 seeks documents and communications provided to, exchanged with, or received from any other federal, state, or local agency or regulator concerning any allegation in the complaint.

Plaintiff initially objected on multiple grounds to each of these requests. Plaintiff objected to all of them as protected by the attorney work product doctrine and the deliberative process privilege, law enforcement investigatory privilege, and attorney-client privilege. For RFPs 1–3,

---

[33] The privilege log also has entries for documents responsive to Ms. Carnes' Interrogatory 3 (state when Plaintiff learned of the alleged fraudulent transfers) and Interrogatory 10 (identify who has personal knowledge of the fraudulent transfers). The earliest dates listed on the two privilege log entries for documents responsive to these Interrogatories are May 19, 2021 and March 1, 2022, respectively.

11

Plaintiff also objected that the requests are overly broad, unduly burdensome, and disproportionate to the needs of the case.[34] Plaintiff then provided its substantive responses further explaining its objections and stating what it would produce. With respect to RFP 1, Plaintiff's supplemental response indicated what it had produced:

> **The Bureau has produced *nonprivileged* documents pertaining to James Carnes, Melissa Carnes, the MCC Trust, the JRC Trust, his businesses, financial records, transactions, assets, accounts, or funds prior to April 5, 2023.** The parties agree that information concerning consumers, such as consumer complaints and files regarding Integrity Advance loans, need not be produced. The Bureau is withholding certain documents based on work product, attorney-client privilege, deliberative process privilege, and law enforcement privilege as will be reflected in its privilege log. . . .[35]

### 2. Plaintiff's Categorical Privilege Log

The Court turns now specifically to Plaintiff's privilege log. In conjunction with its responses and objections to Ms. Carnes' discovery requests, Plaintiff provided its privilege log identifying responsive documents withheld from production. Plaintiff's privilege log contains the following five columns:

- Description;

- Approx. Date Range;

- Authors, Senders, Addresses, and Recipients;

- Applicable Privileges or Protections; and

- Responsive RFP.

---

[34] Pl.'s Supp. Resps. and Objs. to Melissa Carnes' First Set of RFPs, ECF No. 125-3, at 3.

[35] *Id.* at 3–4 (bold and italics added). The Court finds this statement by Plaintiff suggests that it is withholding *privileged* documents pertaining to the Carnes, their trusts, James Carnes' business, financial records, transactions, assets, accounts or funds prior to April 5, 2023, which may include documents prior to April 5, 2021.

Other than the five entries for the CLEAR and Accurint Reports, all of Plaintiff's privilege log entries contain categorical descriptions with lengthy date ranges and identify the authors/senders column with the general description "[a]ttorneys and supporting staff at the Bureau." The description column of Plaintiff's privilege log provides categorical descriptions for "thousands" or "hundreds" of internal notes, memoranda, drafts, analyses, and inter-office communications withheld. As an example, Plaintiff's first privilege log entry describes one of the categories of documents responsive to RFP 1 as:

> Thousands of internal notes, memoranda, drafts, analyses, and other work product regarding the Bureau investigation and Administrative Proceedings against Integrity Advance and James Carnes, created in anticipation of litigation and either by or at the direction of counsel. Responsive documents might also include documents that touch upon the techniques the Bureau uses in conducting investigations and litigation.[36]

This first privilege log entry lists the approximate date range as between April 1, 2012 and January 11, 2021 and asserts the following privileges or protection: "Attorney work product protection; deliberative process privilege; attorney-client privilege; law enforcement privilege."[37]

Again, not including the CLEAR and Accurint reports, Plaintiff's privilege log describes the responsive documents withheld by grouping them into the following categories (summarily described here) with broad date ranges:

(1) Plaintiff's investigation and Administrative Proceedings (Apr. 1, 2012–Jan. 11, 2021),

(2) Judgment Enforcement action and Fraudulent Transfer Action (Jan. 11, 2021–Apr. 5, 2023),

(3) Opening of Plaintiff's investigation (Apr. 1, 2012–Jan. 7, 2013),

---

[36] Privilege log, ECF No. 125-6, at 2.

[37] *Id.*

13

(4)     Investigation of and Administrative Proceedings for violations of consumer finance laws (Jan. 7, 2013–Jan. 11, 2021),

(5)     Investigation into James Carnes' assets available to satisfy the judgment and Judgment Enforcement Action (May 19, 2021–Apr. 5, 2023),

(6)     The fraudulent transfers and the Fraudulent Transfers Action against the Carnes and their trusts (Mar. 1, 2022–Apr. 5, 2023),

(7)     Judgment Enforcement Action to collect assets available to satisfy the judgment against James Carnes (Apr. 7, 2021–Apr. 5, 2023),

(8)     Fraudulent Transfer Action against the Carnes' and their trusts (Mar. 1, 2022–Apr. 5, 2023),

(9)     Judgment Enforcement Action to collect assets available to satisfy the judgment against James Carnes (Apr. 7, 2021–Apr. 5, 2023), and

(10)    Fraudulent Transfer Action against the Carnes and their Trusts (Mar. 1, 2022–Apr. 5, 2023).[38]

### 3. Law Regarding Categorical Privilege Logs

Fed. R. Civ. P. 26(b)(5) requires a party withholding information as privileged to "describe the nature of the documents, communications, or tangible things not produced or disclosed—and to do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."[39] The advisory committee notes accompanying the 1993 amendments to Rule 26 recognize that the level of detail a privilege log must contain is case specific: "Details concerning time, persons, general subject matter, etc., may be appropriate if only a few items are withheld, but may be unduly burdensome when voluminous documents are claimed to be privileged or protected, particularly if the items can be described by categories."[40] The notes further contemplate that "[a] party can seek relief through a protective order under subdivision (c)

---

[38] *See id.* at 2–5.

[39] Fed. R. Civ. P. 26(b)(5)(A)(ii).

[40] Fed. R. Civ. P. 26(b)(5) advisory committee's note to 1993 amendment.

14

if compliance with the requirement for providing this information would be an unreasonable burden."[41]

Taking into account the Rule 26 advisory committee notes regarding privilege logs, some cases from this District have permitted categorical privilege logs. In the case *In re Motor Fuel Temperature Sales Practices Litigation*,[42] where a privilege was asserted over "tens of thousands of documents" regarding post-litigation attorney communications, the court permitted the party withholding the documents to submit a categorical privilege log including the number of documents withheld, the time period encompassed by the documents, and a statement from counsel declaring that the documents fell within the attorney-client privilege and/or the work product doctrine. But in *Sprint Commc'ns Co. L.P. v. Big River Tel. Co., LLC*[43] the court found a party's categorical privilege log deficient for failing to adequately include the information necessary to determine whether the elements of the privilege or protection had been met. The *Big River* court did not require an individual entry for every single document but did require supplementation of the privilege log to provide more detailed and specific categorical entries that would permit assessment of the claims of privilege. The court alternatively allowed the party asserting privilege to file a motion for a protective order relieving it of the burden of further supplementing its privilege log.[44] Both cases allowed categorical privilege logs and recognized whether to allow them is a case specific inquiry. However, in those cases the party required to provide a privilege log had only asserted attorney-client privilege and/or work product doctrine, whereas in this case

---

[41] *Id.*

[42] No. 07-md-1840, 2009 WL 959491, at *3 (D. Kan. Apr. 3, 2009).

[43] No. 08-2046-JWL, 2009 WL 2878446, at *2 (D. Kan. Sept. 2, 2009).

[44] *Id.*

Plaintiff has asserted multiple privileges including the deliberative process and law enforcement privileges. Also, the *Big River* case distinguished the *Motor Fuel* case based upon the magnitude of documents at issue, noting the defendants in that case asserted a privilege over "tens of thousands of documents" exchanged between counsel.[45] In this case, Plaintiff has not shown the number of documents at issue is of that magnitude.

### 4. Plaintiff's Categorical Privilege Log Lacks Sufficient Detail and Information

Based upon its review of the discovery responses and objections at issue, the categorical privilege log provided by Plaintiff, and its review of the applicable law, the Court makes the following findings: The Court finds Plaintiff's privilege log clearly lacks sufficient detail or information about the documents withheld that will permit Ms. Carnes and the Court to assess the various privileges claimed by Plaintiff.[46] The grouping of withheld documents into broad categories on its privilege log makes it impossible to ascertain who sent or received the specific document withheld, the nature of the document (e.g., email, draft letter), the date it was sent, or which particular privilege(s) and/or protection(s) are being asserted for the specific document withheld.

*However*, the Court also finds Ms. Carnes' RFPs 1, 2, and 3 are overly broad and to some

---

[45] *Id.*

[46] *See Hopkins v. Bd. of Cnty. Comm'rs of Wilson Cnty., Kan.*, No. 15-CV-2072-CM-TJJ, 2018 WL 3536247, at *6 (D. Kan. July 23, 2018) (finding insufficient a categorical privilege log that contained "no information regarding the number of documents being withheld, the identities of the author or recipients, the date the documents were prepared or sent, the number of pages, or the purpose of preparing the documents").

extent seek discovery outside the scope permitted by Rule 26(b)(1).[47] Pertinent to the instant motion, to the extent these discovery requests encompass documents that clearly could have no bearing on Ms. Carnes' statute of limitations defense, Plaintiff's categorical privilege log entries are sufficient. The Court finds that privilege log categories 5 through 10 listed above, all of which cover time frames beginning after April 5, 2021 (two years prior to the date Plaintiff filed this lawsuit) are sufficient and Plaintiff will not be put to the unnecessary and burdensome task of providing any additional privilege log information regarding those categories.

With regard to privilege log categories 1 through 4, the Court finds Plaintiff's categorical descriptions and entries are not sufficient. It is impossible to ascertain from the broad categories and limited information provided on Plaintiff's privilege log for these categories whether Plaintiff is withholding as privileged documents relevant to Ms. Carnes' statute of limitations defense. Plaintiff may be withholding documents dated after June 3, 2013 (the date of the first alleged fraudulent transfer) and prior to April 5, 2021 (two years prior to the date this action was filed) that reflect or mention asset sales or transfers of real or personal property of the Carnes, their trusts, or business. If so, these documents would be relevant to Ms. Carnes' statute of limitations defense and must be individually logged in detail on Plaintiff's privilege log.

While the Court is sympathetic to Plaintiff's desire to avoid individually logging a large number of documents, the Court must balance those concerns against Plaintiff's obligation to provide a sufficient privilege log that allows Ms. Carnes to assess Plaintiff's privilege claims. The Court does so here by limiting the responsive document categories (1–4 only) and subject matter

---

[47] Under Fed. R. Civ. P. 26(b)(2)(C)(iii), the Court must limit the extent of discovery otherwise allowed if the proposed discovery is outside the scope permitted by Rule 26(b)(1), which limits discovery to nonprivileged matter that is "relevant to any party's claim or defense and proportional to the needs of the case."

(asset sales or transfers) required to be logged, and the applicable timeframe, so as to limit the burden on Plaintiff to the extent possible while still providing Ms. Carnes the amount of detail needed to evaluate the privileges asserted.[48]

The Court therefore orders Plaintiff to provide a more detailed supplemental privilege log that lists all required information <u>for each document withheld</u> on the basis of any claimed privilege for the following documents:

> All responsive documents in categories 1 – 4 of Plaintiff's existing privilege log, limited to the timeframe between **June 3, 2013** (the date of the first alleged fraudulent transfer) and **April 5, 2021** (two years prior to the date this case was filed) that reflect or mention any asset sales or transfers of real or personal property of James Carnes, Melissa Carnes, the MCC Trust, the JRC Trust, or James Carnes' business.[49]

Plaintiff's supplemental privilege log must provide the following information for each responsive document withheld on the basis of privilege: (a) description of the document (i.e., email, memorandum, letter); (b) date the document was prepared or sent; (c) identity of the person(s)

---

[48] Plaintiff has not requested a protective order, therefore the Court has crafted the solution set out here. Plaintiff's response to Interrogatory 2 states "it had not investigated the assets and holdings of James Carnes—including any assets he controlled or in which he held an interest—for potential fraudulent transfer until after this Court entered the Judgment against him on July 30, 2021." ECF No. 125-2, at 3. In light of this response, limiting Plaintiff's logging requirement to responsive documents prior to April 5, 2021 that mention asset sales or transfers should not impose an unduly burdensome task on Plaintiff. However, to any extent Plaintiff obtained information reflecting or mentioning asset sales or transfers during the specified time frame, Plaintiff must log those documents regardless of how or in what phase of the actions/investigations involving the Carnes they were stumbled upon or discovered.

[49] The Court discourages the filing of a motion for protective order by Plaintiff relative to the privilege log issue at this stage of the proceedings. If Plaintiff still believes after the limitations imposed here that the logging requirements imposed will be unduly burdensome and if it chooses to file a motion for protective order, it must do so no later than **April 5, 2024** and shall provide an affidavit showing good cause in support, as well as a suggested modification of the scope of the documents it must log.

who authored or sent the document; (d) identity of all recipient(s); (e) purpose of preparing the document; (f) number of pages; (g) specific privilege or protection being asserted, and (h) the discovery request(s) to which the document is responsive.[50]

**IT IS THEREFORE ORDERED** that Defendant Melissa Carnes' Motion to Compel (ECF No. 125) is granted in part and denied in part. The motion is granted in part as to the requested CLEAR and Accurint reports responsive to RFP 1 and the request Plaintiff provide a more detailed supplemental privilege log. The motion is otherwise denied.

**IT IS FURTHER ORDERED** that if it has not already done so, Plaintiff shall produce redacted CLEAR and Accurint reports responsive to RFP 1 **within fourteen (14) days** of this Memorandum and Order.

**IT IS FURTHER ORDERED** that **within thirty (30) days** of this Memorandum and Order, Plaintiff shall provide a supplemental privilege log for the documents identified herein. Ms. Carnes shall have **thirty (30) days** from the date the supplemental privilege log is provided in which to file any motion challenging any privilege asserted.

IT IS SO ORDERED.

Dated March 20, 2024, at Kansas City, Kansas.

Teresa J. James
U. S. Magistrate Judge

---

[50] These privilege log requirements differ somewhat from the information normally required to be provided. *See Hopkins,* 2018 WL 3536247, at *6 (noting the level of detail required in a privilege log is determined on a case-by-case basis and listing what information a privilege log generally should contain).